# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STATE FARM FIRE & CASUALTY**
**COMPANY,**

**Plaintiff,**

**-vs-**                                              **Case No.  6:10-cv-1103-Orl-31GJK**

**SILVER STAR HEALTH AND REHAB**
**INC., JUDITH MCKENZIE and JEAN**
**COLIN,**

**Defendants.**

_____

# ORDER

This cause comes before the Court without oral argument on three motions for summary

judgement: (Doc. 124) filed by Defendant Silver Star Health and Rehab, Inc. ("Silver Star"); (Doc.

125) filed by Defendant Judith McKenzie ("McKenzie"); and (Doc. 126) filed by Defendant Jean

Colin ("Colin"). Plaintiff, State Farm Fire & Casualty Co. ("State Farm") filed three responses (Docs.

148, 149, 150); Defendants Silver Star and McKenzie replied (Docs. 155 and 156).

## I. Background

Plaintiff sues Silver Star, McKenzie, and Colin (collectively the "Defendants") for submission

of illegal and fraudulent claims for No-Fault Personal Injury Protection ("PIP") benefits and Medical

Payment Coverage ("MPC"). In material part, the Complaint (Doc. 1) alleges that McKenzie, a

licensed chiropractic physician, is held out to be the "owner" of Silver Star, a massage establishment.

However, Plaintiff alleges that McKenzie "owns" Silver Star in name only and it is Colin who

established and operates Silver Star, despite the fact that he is not a licensed health-care practitioner

or relative of McKenzie. Thus, Plaintiff alleges that Colin is really the "de facto" owner of Silver Star and, as a result, Silver Star is operating in violation of Florida law. Plaintiff further alleges that Defendants contrived McKenzie's ownership of Silver Star solely for the purpose of avoiding Florida's statutory licensing requirement.

In 2004, the Florida Legislature enacted the Health Care Clinic Act ("HCCA") to strengthen the regulation of health care clinics throughout the state. In addition to expanding the types of businesses required to obtain licenses, it requires, *inter alia*, background checks for all owners, clinic inspection and certifications, proof of financial responsibility, and substantially higher fees to obtain licensure. This case however, turns on an exception to these requirements in FLA. STAT. § 400.9905(4)(g). It states, in relevant part,

> the licensure requirements of this part do not apply to . . . A sole proprietorship, group practice, partnership, or corporation that provides heath care services by licensed health care practitioners . . . which are wholly owned by one or more licensed health care practitioners . . . so long as one of the owners who is a licensed heath care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws. However, a health care practitioner may not supervise services beyond the scope of the practitioner's license, except that, for the purposes of this part, a clinic owned by a licensee in § 456.053(3)(b) that provides only services authorized pursuant to § 456.053(3)(b) may be supervised by a licensee specified in § 456.053(3)(b).

FLA. STAT. § 400.9905(4)(g). "[I]t is unlawful to provide services that require licensure . . . without first obtaining . . . a license." FLA. STAT. § 408.804. Additionally,  Florida's Motor Vehicle No-Fault Law provides that, "[a]n insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered . . . ." FLA. STAT. § 627.736(5)(b)(1)(b). State Farm's claims in this case are based entirely on this requirement in Florida's statute.

According to the Complaint, Plaintiff paid PIP and MPC benefits to Silver Star totaling

over $151,000.00 on behalf of its insureds. In addition, Silver Star has submitted unpaid claims totaling over $70,000.00. Plaintiff seeks damages for unjust enrichment (Count I) and declaratory relief (Count II).

## II. Standard

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or

allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

## III. Analysis

Defendants' arguments in the three motions for summary judgement are largely duplicative and overlapping; as such, the Court will treat them as one unless otherwise noted.

### A. FLA. STAT. § 627.736

Florida's Motor Vehicle No-Fault Law, FLA. STAT. § 627.736, requires insurers to provide PIP benefits up to $10,000 for injuries resulting from motor vehicle accidents. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.,* 427 Fed. App'x 714, 717 (11th Cir. 2011). Insurers are not required, however, to reimburse for services and care that are "not lawful at the time rendered." FLA. STAT. § 627.736(5)(b)(1)(b).

Defendants move for summary judgement on both Counts based on FLA. STAT. § 627.736(1)(a). Under Defendants' reading of the statute, even if Silver Star was not properly licensed, State Farm is still required to pay the claims in this case because the services were lawfully rendered by a licensed physician. Defendants' rely on FLA. STAT. § 627.736(1)(a) which provides, ". . . medical benefits shall provide reimbursement only for such services and care that are *lawfully provided, supervised, ordered, or prescribed* by a [licensed] physician . . . ." FLA. STAT. § 627.736(1)(a) (emphasis added). Of particular importance to Defendants is the "disjunctive" wording of the statute, which indicates "alternatives[,] and requires that those alternatives be treated separately." (Doc. 124 at 8). This argument is unpersuasive.

Section 627.736(1)(a) is a prohibition, not a mandate–which is clear when read in conjunction with the remainder of the statute. For example, subsection (5)(b)(1)(b) provides "[a]n insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered . . . ." FLA. STAT. § 627.736(5)(b)(1)(b). Subsection 5(d) provides that "[n]o statement of medical services may include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services." FLA. STAT. § 627.736(5)(d). Subsection (4)(b) requires that insurers provide notice prior to contesting a claim, but it also states that,

> [t]his paragraph does not preclude or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted under, or in violation of, subsection (5). Such assertion by the insurer may be made at any time, including after payment of the claim or after the 30-day time period for payment set forth in this paragraph.

FLA. STAT. § 627.736(4)(b). Finally, " '[l]awful' or 'lawfully' means in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." FLA. STAT. § 627.732(11).

Noticeably absent from Defendants' briefs is any discussion of FLA. STAT. §§627.736(4), 627.736(5), or 627.732(11). These sections are only mentioned in passing, after which Defendants arbitrarily conclude they are "erroneous." Defendants' claim that, "it is clear" the services provided by Silver Star are "per se lawful and there is no need within the context of the PIP statute to go any further." (Doc. 124 at 10; Doc. 125 at 21). Other than this conclusory assertion however, Defendants present no reason why the Court should ignore a large portion of the statutory language.

In his Motion, Colin argues that the HCCA is unconstitutionally vague under Florida's Due Process clause. "A vague statute is one that fails to give adequate notice of what conduct is prohibited and which, because of its imprecision, may also invite arbitrary and discriminatory enforcement." *Southeastern Fisheries Ass'n, Inc. v. Dept. of Natural Resources*, 453 So.2d 1351, 1353-54 (Fla. 1984). Colin argues that the "requirement that the medical provider 'supervise' the business activities is vague and ambiguous at best." (Doc. 126 at 11). "Supervise" is a word of common usage. When given its "plain and ordinary meaning," it provides sufficient notice of the conduct proscribed. *Id.* (noting "[i]n determining whether a statute is vague, common understanding and reason must be used. . . . Further, courts cannot require the legislature to draft laws with such specificity that the intent and purpose of the law may be easily avoided."); *see also Ross v. City of Orlando*, 141 F. Supp. 2d 1360, 1363 (M.D. Fla. 2001) (noting "[i]n determining whether a statute is void for vagueness, due process requires less exactitude in a statute that lacks criminal sanctions.").[1]

### B. Declaratory Judgement

The Florida Supreme Court has held that "an insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F.

---

[1] The Court notes that, other than directly responding to this argument, State Farm does not appear to challenge McKenzie's "supervision" of Silver Star. Rather, its claims are based primarily on whether Silver Star was "wholly owned" by McKenzie. To qualify for the exemption in FLA. STAT. § 400.9905(4)(g), a clinic must be "wholly owned" by a "one or more licensed health care practitioners, . . . so long as one of the owners who is a licensed heath care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws." Accordingly, even if the Court accepts Colin's proposition that the statute is vague as to the supervision requirement, Silver Star would still not qualify for the exemption if it was not "wholly owned" by McKenzie.

Supp. 2d 1279, 1292-93 (M.D. Fla. 2009) (quoting *Higgins v. State Farm Fire & Casualty Co.*, 894 So.2d 5, 12 (Fla. 2004)).[2] This Court previously found that an actual controversy existed as to two questions:

1.    Whether State Farm is legally obligated to pay the pending claims which have become due if Defendants submission of the claims resulted in a violation of Florida Statutes or the public policy of the State of Florida; and

2.    Whether State Farm is legally obligated to pay claims that have been submitted to State Farm for reimbursement but which have not yet come due if the claims are based on the same billing practice and procedure specifically identified above as having been committed by the Defendants.

Put simply, the issue is whether Defendants' alleged violations of the licensing requirements of the HCCA, FLA. STAT. § 400.9905(4)(g), entitle State Farm to deny PIP benefits under Florida's Motor Vehicle No-Fault Law, FLA. STAT. § 627.736. Defendants argue that State Farm is not entitled to challenge Mckenzie's ownership of Silver Star or compliance with Florida Statutes because the No-Fault statute, FLA. STAT. § 627.736(1)(a), does not provide an express or implied basis to challenge ownership.[3]

---

[2] The Florida Declaratory Judgment Act is substantive and remedial in nature. FLA. STAT. § 86.101; *Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc.,* 509 F. Supp. 2d 1158, 1160 (M.D. Fla.2007), vacated in part on other grounds, 2:04-cv-26-FTM-29DNF, 2007 WL 1455937 (M.D. Fla. May 16, 2007), *aff'd*, 312 Fed.Appx. 211 (11th Cir. 2009). Although this Court has previously construed this as a claim for relief under 28 U.S.C. §2201, as a practical matter, the statutes are not materially different. *See Nirvana Condominium Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 (S.D. Fla. 2008).

[3] As the Court noted in a previous order (Doc. 43), there is no dispute that State Farm does not have a private right of action under the HCCA.

*1. Silver Star*

A Florida appellate court had occasion to address a similar issue in *Active Spine Ctrs., LLC v. State Farm Fire and Cas. Co.* 911 So.2d 241, 242 (Fla. 3d DCA 2005). In *Active Spine*, a chiropractic clinic sued for declaratory relief after State Farm denied its PIP claims. Under a similar version of the statute at issue here, the clinic was exempted from registration requirements because it was wholly owned by a licensed medical professional. However, after the owner passed away, the clinic "was required to cease its operations until it registered with the department." *Id*. at 244. Although it promptly hired a new "licensed medical professional" to supervise its procedures, the clinic neglected to register for two months–resulting in two months of unlicensed practice. State Farm denied the PIP claims "because the clinic was not registered," *Id*. at 243, and the clinic sued. Significantly in that case, as here, there were no allegations that the services provided by the clinic were deficient in any other way.

The trial court granted summary judgement for State Farm and Florida's Third District Court of Appeals affirmed because "the clinic is not entitled to be paid for the unlawful services that were provided during the period in question." *Id*. at 244. The court reasoned that Florida's PIP statute requires an insurer to pay only for "lawfully" rendered treatment, and that during the period in question, the clinic was operating unlawfully because it was unlicensed. Although it recognized that this violation amounted to a technicality, the court noted that the intent behind the registration statute was to protect the public from treatment at "unlicensed clinics staffed by untrained personnel" and that "[o]nly by enforcing the registration statute in circumstances such as this can Florida citizens be protected." *Id*. at 244.

Although *Active Spine* was based on an earlier version of the statute, the reasoning appears to apply in this case with the same force. Accordingly, there is an actual controversy regarding the ownership of Silver Star. If McKenzie did not "wholly own" the business, State Farm is entitled to relief because the services were "not lawful at the time rendered."[4]

*2. McKenzie and Colin individually*

McKenzie individually moves for summary judgement on Count II because there is no actual controversy as to her. The Court agrees. Silver Star submitted claims for payment, not McKenzie. Although McKenzie may ultimately benefit from Silver Star's success in this case, there is no dispute that the payments, if owed at all, are owed to Silver Star.

State Farm argues that "both McKenzie and Colin are directly involved in establishing what State Farm contends is an improper arrangement and the unlawful provision of services and submission of claims." (Doc. 149 at 14). Even accepting that this is true, however, the Court previously found that the only controversy is whether "State Farm is legally obligated to pay" the pending and submitted claims. (Doc. 43 at 8). Although this may require an inquiry into the actions of McKenzie and Colin, it does not create an "actual controversy" as to them because the disputed

---

[4]  The Court also rejects Defendants' argument that McKenzie "owns" Silver Star as a matter of law. Although it is undisputed that McKenzie owned 100% of Silver Star stock and that her name appears on all official records, that alone is insufficient to establish ownership; especially where, as here, there is evidence that suggests that she exercised virtually no control. *See* (Doc. 148 at 4-10). The cases cited by Defendants do not stand for the proposition that a person who owns 100% of the stock of a business is the "owner" as a matter of law. *See, e.g., Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) (the Court considered whether "a corporate subsidiary can claim instrumentality status [under the Foreign Sovereign Immunities Act of 1976] where the foreign state does not own a majority of its shares"); *Sackett v. Shahid*, 722 So.2d 273 (Fla. 1st DCA 1998) (court considered whether *capital stock* was solely owned by a party).

claims were submitted by, or on behalf of, Silver Star. Accordingly, the Court will grant summary judgement on Count II for McKenzie and Colin in their individual capacity.

### C. Unjust Enrichment

The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Henry M. Butler Inc. v. Trizec Properties Inc.*, 524 So.2d 710 (Fla. 2d DCA 1988). State Farm asserted a claim for unjust enrichment for PIP payments made to Silver Star while it operated without a license. Defendants' move for summary judgement on several bases, each will be discussed in turn.

### 1. Adequate Compensation

An unjust enrichment claim fails as a matter of law where a plaintiff has been adequately compensated for the benefit conferred. *See Moynet v. Courtois*, 8 So.3d 377, 379 (Fla 3d DCA 2009). Defendants contend that State Farm was "adequately compensated" because there are no allegations that any services were medically unnecessary, or that any services were performed by unlicensed individuals. (Doc. 124 at 18).

This argument, however, appears to be based on Defendants' flawed interpretation of the relevant statutes. Florida law is clear that State Farm can refuse payment under FLA. STAT. § 627.736(5)(b)(1)(b) for services unlawfully rendered. *See Active Spine,* 911 So.2d 241. As a result of Defendants' alleged conduct, State Farm mistakenly paid claims which it was statutorily entitled to deny. Thus, it would be inequitable to allow Defendants to retain those benefits.

### 2. Wrongful Conduct

Several federal courts have drawn a distinction between "unjust enrichment" and "wrongful enrichment." These courts have reasoned that wrongful conduct which results in "enrichment" creates a cause of action in tort for the wrong committed, e.g., fraud, civil conspiracy, conversion. Unjust enrichment claims, however, are concerned solely with enrichments that are unjust independent of any wrong. According to this line of cases, when a claim for unjust enrichment is based solely on wrongful conduct, it must be dismissed in favor of a properly pled claim in tort. *See*, *e.g.*, *Guyana Tel. & Tel. Co. v. Melbourne Intern. Comm'ns, Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003).

State Farm points out that this line of cases, although purportedly based on Florida law, is grounded instead on a single law review article that makes no mention of Florida law. *See Guyana*, 329 F.3d at 1245 n.3 (citing *Unjust Enrichment and Wrongful Enrichment*, 79 TEXAS L.REV. 1767, 1783 (2001)); *Flint v. ABB, Inc.*, 337 F.3d 1326, 1331 n. 2 (11th Cir. 2003) ((citing *Unjust Enrichment and Wrongful Enrichment*, 79 TEXAS L.REV. 1767, 1783 (2001)); *State of Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1308 (S.D. Fla. 2005) (citing *Guyana* and *Flint*); *Group Assets, LLC v. Fortress Investment Grp.*, 2010 WL 2951508 at *4 (M.D. Fla. 2010) (citing *Guyana, Flint,* and *Tenet Healthcare*).

Indeed, it appears that no Florida court has ever made this distinction. *See, e.g., Golden v. Woodward*, 15 So.3d 664, 669 (Fla. 1st DCA 2009) ("An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." (quoting *Henry M. Butler, Inc. v. Trizec Prop., Inc.,* 524 So.2d 710, 711 (Fla. 2d DCA 1988)); *see also Physicians Injury Care Center,* 427 Fed. App'x 714 (upholding a jury verdict on an unjust enrichment claim for

fraudulent submission of PIP claims based on a "sham course of treatment"). In the absence of any

Florida law on the issue, the Court declines to make such a distinction.[5]

### 3. Economic Loss Rule

The Court has already rejected this argument in its previous Order. (Doc. 43). Defendants

"respectfully assert," however, that "a plethora of Florida cases hold that when a medical provider

accepts an assignment of benefits, that medical provider stands in the shoes of the insured for all

purposes including enforcement of the contract." (Doc. 124 at 19) (citing *Price v. RLI Ins. Co.*, 914

So.2d 1010, 1013-14 (Fla. 5th DCA 2005)). For the sake of clarity, the Court will address the issue

yet again.

The economic loss rule prevents parties in contractual privity from suing in tort to recover

purely economic damages. *Indemnity Ins. Co. Of N.A. v. American Aviation, Inc.,* 891 So.2d 532, 537

(Fla. 2004). As the court in *Indemnity* noted, "[u]nderlying this rule is the assumption that the parties

---

[5] The Court also rejects Defendants arguments that an unjust enrichment claim must fail where there is an adequate remedy at law (raised for the first time in the reply). Although "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist, . . . that rule does not apply to unjust enrichment claims." *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998). Rather, "[i]t is only upon a showing that an express contract exists [between the parties] that the unjust enrichment ... count fails." *Id. See also Physicians Injury Care Center,* 427 Fed. App'x at 722. To be precise, a claim for unjust enrichment in Florida is an action at law, not equity. *American Safety Ins. Srv., Inc. v. Griggs*, 959 So.2d 322, 331 (Fla. 5th DCA 2007) (noting "an action for unjust enrichment is an action at law, not in equity"); *Della Ratta v. Della Ratta*, 927 So.2d 1055, 1060 n.2 (Fla. 4th DCA 2006) (recognizing that, "[i]n Florida, all implied contract actions, including unjust enrichment, were part of the action of assumpsit, which was an action at law under the common law."); *Commerce P'ship 8098 Ltd. P'ship v. Equity Contr. Co.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997) (noting that, "[a]lthough some Florida courts have described quasi contracts as being 'equitable in nature,' . . . the term has been used in the sense of 'fairness,' to describe that quality which makes an enrichment unjust, not as a reference to the equity side of the court.").

to a contract have allocated the economic risks of nonperformance through the bargaining process."

*Id.* at 536. In this case, the parties are not in contractual privity for purposes of the economic loss rule

because, as the court explained in *Physicians Injury Care Center*,

> "Under Florida law, the assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty." *Shaw v. State Farm Fire & Cas. Co.*, 37 So.3d 329, 332 (Fla. 5th DCA 2010). This includes the duty of performance under the contract. *Id.* ("[T]he assignee of a contract right owes no duty of performance to the obligor."). Thus, PICC, as the assignee of the right to payment of PIP benefits, assumed no duty of performance under the policyholders' insurance contracts. Because the economic loss rule applies "[w]hen the fraud relates to the performance of the contract" and PICC assumed no duty of performance through the assignment of benefits, the economic loss rule does not bar State Farm's claim . . . .

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.,* 427 Fed. App'x 714, 720 (11th

Cir. 2011). In this case, Defendants "fail to appreciate the legal effect of an assignment of a contract

in Florida." (Doc. 156 at 7). Silver Star, as the assignee of the right to payment of PIP benefits,

assumed no duty of performance under the insurance contracts. Therefore, the economic loss rule does

not apply.

### 4. Direct Benefit Requirement

To maintain a claim for unjust enrichment, a plaintiff must have conferred a *direct* benefit on

a defendant. *Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Florida, N.A.,* 667 So.2d

876, 879 (Fla. 3d DCA 1996); *see also Century Sr. Servs. v. Consumer Health Ben. Ass'n,* 770

F.Supp.2d 1261, 1267 (S.D. Fla. 2011). McKenzie argues that she did not directly benefit from the

PIP payments, but resolution of this issue depends entirely on McKenzie's "ownership" status. If, for

example, McKenzie is paid only in the form of a regular salary, it could hardly be said that she directly

benefitted any more than the average employee. If, however, Silver Star is merely a "pass through

-13-

entity" as State Farm contends, McKenzie would have received a sufficiently direct benefit. Since the nature of McKenzie's income from Silver Star is a disputed issue of material fact, she is not entitled to judgement as a matter of law on the unjust enrichment claim. *See American Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322, 331 (Fla. 5th DCA 2007); *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.,* 427 Fed. App'x 714, 723 (11th Cir. 2011).

In light of the foregoing, it is hereby **ORDERED** that Defendants' Motions for summary judgement are **GRANTED in part, DENIED in part** as follows,

1.  Defendant Silver Star Health and Rehab, Inc.'s Motion, (Doc. 124), is **DENIED**.

2.  Defendants Judith McKenzie and Jean Colin's Motions (Docs. 125 and 126) are **GRANTED** insofar as they seek summary judgement on Count II (Declaratory Judgement), but **DENIED** in all other respects.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 19, 2011.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE