### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STATE FARM FIRE & CASUALTY COMPANY,**

                **Plaintiff,**

**-vs-**                                **Case No.  6:10-cv-1103-Orl-31GJK**

**SILVER STAR HEALTH AND REHAB INC., JUDITH MCKENZIE and JEAN COLIN,**

                **Defendants.**

_____

## ORDER

This cause comes before the Court on Defendants Motions for Judgment as a matter of law and for a new trial. (Docs. 288, 289, 290). Plaintiff State Farm has filed one response (Doc. 294).[1]

### I. Procedural History

State Farm initiated this action on July 23, 2010 seeking damages for unjust enrichment and declaratory judgment arising out of its claim that Dr. Judith McKenzie ("McKenzie")was falsely held out as the owner of Silver Star Health and Rehab, Inc. ("Silver Star") in violation of Florida law. The unjust enrichment claim came before a jury which rendered its verdict in favor of State Farm on February 23, 2012. Thereafter, the Court entered judgment for State Farm as to Count I of the Complaint in the amount of seventy-three thousand nine hundred thirty-seven dollars and fifty-nine cents ($73,937.59) against Silver Star and Jean Colin ("Colin"), and three thousand nine hundred forty

_____

[1] The factual background of this case was described in a previous Order (Doc. 157) and will not be repeated here.

dollars ($3, 940.00) against McKenzie. (Doc. 281). Defendants now move for directed verdict, or in the alternative, a new trial.

## II. Standards

### A. Motion for Judgment as a Matter of Law

Fed.R.Civ.P. 50(b) permits a party to move for judgment as a matter of law after the jury has returned its verdict. *Johnson v. Guerrieri Mgmt., Inc.*, 437 Fed. App'x 853, 857 (11th Cir. 2011). In ruling on a Rule 50 motion, the court must determine whether the evidence is "legally sufficient to find for the party on that issue." *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citation omitted). Specifically, "in considering a motion for a directed verdict, the court does not weigh the evidence, but draws all factual inferences in favor of the nonmoving party." *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554, 110 S.Ct. 1331, 108 L.Ed. 2d 504 (1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor)). This standard is the same whether the motion is made prior to, or after the jury's verdict. *Id.* (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004)).

### B. Motion for a New Trial

A renewed motion for judgment as a matter of law may be joined, in the alternative, with a motion for a new trial under Rule 59. Fed.R.Civ.P. 50(b). These motions "have wholly distinct functions and entirely different standards govern their allowance." 9A Wright & Miller, *Federal Practice and Procedure* § 2531.

> If a motion for new trial is granted, the case is tried again. If the motion for judgment as a matter of law is granted, the case is at an end. Because of the finality that the latter motion has, it is natural that it should be measured by a far more rigorous standard. On a motion for a new trial, the court has a wide discretion to order a new trial whenever prejudicial error has occurred. On a motion for judgment as a matter of law, it has no discretion whatsoever and considers only the question of whether there is sufficient evidence to raise a jury issue.

*Id*. The decision as to whether to grant a new trial is committed to the discretion of the trial judge.

*Lipphardt v. Durango Steakhouse of Brandon, Inc*., 267 F.3d 1183, 1186 (11th Cir. 2001).

Rule 59(a) (1) provides that after a jury trial a new trial may be granted to all or any of the parties on all or part of the issues "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Any such motion must be filed no later than 10 days after entry of the judgment. Fed.R.Civ.P. 59(b). In addition, the court may order a new trial on its own initiative, so long as it does so not later than 10 days after the entry of judgment. Fed.R.Civ.P. 59(d). If a timely Rule 59 motion has been filed, the court may grant it for a reason not stated in the motion. Fed.R.Civ.P. 59(d).

The trial court may grant a motion for a new trial under Rule 59 if it believes the verdict rendered by the jury was contrary to the great-and not merely the greater-weight of the evidence. *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir.1982). To make this determination, the trial judge must independently weigh the evidence favoring the jury verdict against the evidence in favor of the moving party. *Id*. (citing *Rabun v. Kimberly-Clark Corp*., 678 F.2d 1053, 1060 (11th Cir. 1982)). A trial judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury. *Williams*, 689 F.2d at 973 n. 7. In cases involving simple issues, highly disputed facts, and an absence of "pernicious occurrences," the Court has less

freedom to disturb a jury verdict than it does in cases involving complex issues, facts not highly

disputed, and events arguably marred by error. *Id.* (citing, among others, *Conway v. Chemical Leaman*

*Tank Lines, Inc.*, 610 F.2d 360, 362 (5th Cir.1980)).

## III. Analysis

Defendants raise six arguments in support of their Motions.[2]  They argue that there was

insufficient evidence to show: (1) that Defendants were "directly benefitted" by State Farm's payments

to Silver Star; (2) that State Farm made payments pursuant to "medical payment coverage" ("Med

Pay"); or (3) that State Farm paid benefits pursuant to existing contracts of insurance. Additionally,

Defendants argue (4) that the jury instructions regarding ownership were erroneous; (5) that Florida

law does not support a private cause of action to determine the "ownership" of a business; and (6) that

the Court erred in allowing testimony of Vicki Kirby and John Savino.

### A. Damages for Unjust Enrichment

There was sufficient evidence to support the jury's verdict as to McKenzie and Colin.

Defendants argue that there was no evidence that McKenzie or Colin received any *direct benefit* from

State Farm's payment of benefits to Silver Star. Specifically, they point out that all of the payments

were made to Silver Star directly, and not to the individual defendants. As the Court has noted

however, this alone is not dispositive. (Doc. 157 at 13-14). The jury could have reasonably concluded

that Silver Star was merely a "pass through" entity. Indeed, evidence showed that the only two

principles of Silver Star were Colin and McKenzie. *See American Safety Ins. Serv., Inc. v. Griggs*, 959

---

[2] Because the Motions raise similar arguments, the Court will treat them as one unless otherwise noted.

So.2d 322, 331 (Fla. 5th DCA 2007); *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 Fed. App'x 714, 723 (11th Cir. 2011).

Further, the jury awarded damages consistent with the evidence presented at trial. Evidence showed that McKenzie received over $39,000.00 in "owner draws" for her participation in the business, while Colin paid himself over $230,000.000. Though certainly not all of this amount could be directly attributable to State Farm, the jury clearly took that into account when it calculated damages–$3, 940.00 against McKenzie (or 10% of the total "owner draw" amount) and $73,937.59 against Colin (or 32% of his total compensation).

### B. Med Pay Benefits and Contracts of Insurance

Defendants argue that there was no evidence regarding payments made by State Farm to Silver Star pursuant to Med Pay coverage. State Farm points out, however, that the parties stipulated that the total amount of payments made to Silver Star on behalf of State Farm's insureds was $151,815.18–this amount included PIP and Med Pay coverage. The testimony of State Farm's corporate representative corroborated the stipulation. This is sufficient evidence to support the jury's award.

Defendants also argue that State Farm is not entitled to recover Med Pay coverage payments as a matter of law. State Farm's claims are based on solely on the No-Fault statute, which mandates PIP payments, but not Med Pay coverage (which is an optional addition to State Farm's policies). As such, Defendant's claim that Med Pay is not recoverable. This formalistic argument ignores the obvious fact that, but for Defendants' wrongful acts, State Farm would not have made *any* payments to Silver Star; Med Pay benefits are conditioned on PIP benefits.

The Court also rejects Defendants' claims that State Farm failed to produce sufficient evidence "of the existence of policies of insurance . . . [that would] . . . entitled State Farm to recover benefits

paid to Silver Star." (Doc. 289 at 6). In addition to the "declarations pages" entered into evidence which detailed every relevant payment, there was sufficient testimonial evidence at trial that $151,815.18 was paid to Silver Star on behalf of State Farm's insureds. There was no need to introduce every policy into evidence.

### C. Ownership

Defendants, again, raise the same legal arguments rejected by the Court many times before. (*See* Docs. 43, 50, 157, 164, & 276). It is undisputed, and patently obvious, that there is no definition of "wholly owned" in the statute. That being the case, the Court turned to the dictionary definition, but found that it too was lacking. Blacks defines "ownership" as,

> the bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others. Ownership implies the right to possess a thing, regardless of any actual or constructive control. Ownership rights are general, permanent, and inheritable.

Though this definition is accurate, it is amorphous and provides little guidance to a layperson charged with unraveling a scheme such as the one at issue in this case–which was intentionally designed to obscure true ownership. To aid the jury, the Court provided a list of factors that are "commonly tied to the ownership of a business entity: (1) Ownership of the stock of a corporation and the exercise of corporate powers; (2) The extent of any capital investment in the business; (3) The right to profit from the business and the risk of loss; (4)The power to sell the business or cause it to cease operations; (5)The extent to which an individual participates in the management and control of the businesses operations." (Doc. 273). This list was followed by a short explanation,

> [y]ou should consider these factors in making your decision, but no single factor is necessarily more significant than the others. Further, consider that an owner may delegate responsibilities to another, yet still not cede actual "ownership." If a person

> has the right to possess and control a business, he or she may still be the "owner" of it, regardless of the extent to which that person is involved in its affairs.

(Doc. 273). Despite Defendants' arguments to the contrary, this instruction was a necessary expansion on the Black's definition and did not constitute prejudicial error.[3]

### D. The Testimony of Savino and Kirby

Both Savino and Kirby were investigators that interviewed McKenzie prior to trial, during the course of investigations unrelated to this case. According to Defendants, their existence went undisclosed until State Farm submitted its witness list February 10, 2012 (or eleven days before trial). Defendants filed several motions to exclude the testimony, or to compel deposition, all were denied by the Court and both witnesses were allowed to give limited testimony at trial. Defendants' primary argument is that the testimony of Kirby and Savino should have been excluded because State Farm failed to list them in the Rule 26 disclosures.

State Farm points out in response that it was actually Defendants' responsibility to disclose the existence of Kirby and Savino. Each had interviewed McKenzie about her relationship with Silver Star while this case was pending; as such, their existence and relevance to this case were known to Defendants well before they could have been discovered by State Farm. Regardless, State Farm contends that it learned about each in early November, 2011, and promptly disclosed them.

It appears to the Court that Defendants should have been well aware of the existence Savino and Kirby well before trial, yet they made no effort to depose either. Instead Defendants waited until the eve of trial to seek the exclusion of their testimony. Accordingly, Defendants have not shown that

---

[3] To the extent Defendants repeat their prior legal arguments, each are rejected for reasons explained in previous Orders. (*See, e.g.,* Doc. 157).

they were prejudiced. *Del Rio Dist. v. Adolph Coors Co.*, 589 F.2d 176, 179 n. 3 (5th Cir. 1979)[4]

(quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2803 (1973 and

1991 supp.)).

## IV. Conclusion

Under either the Rule 50 or Rule 59 standard, Defendants have failed to show that they are

entitled to the relief requested in any respect. Accordingly, it is **ORDERED** that Defendants' Motions

(Docs. 288, 289, 290) are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 22, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
**UNITED STATES DISTRICT JUDGE**

---

[4] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.